## WARREN F. FULLER

### *v.*

### ANNA M. FULLER.

1. To justify a finding that adultery is proved, the court should be satisfied that the witnesses swearing to the facts showing guilt are honest, that they are not mistaken, and that their testimony is true.

2. A judge is not bound to believe a thing merely because a witness swears to it, but he should test the evidence as other men of discernment would test it, believing what he is convinced is true, and discarding what he is convinced is false.

On petition and answer, and supplemental answer and proofs.

*Mr. Theodore Ryerson* and *Mr. Gilbert Collins,* for petitioner.

*Mr. John W. Bissell,* for defendant.

Fuller *v.* Fuller.

VAN FLEET, V. C.

The petitioner sues for a divorce. He charges his wife with having committed adultery with two different men. No direct proof is offered in support of either charge. One is wholly unsupported by proof of any kind; the petitioner has attempted to establish the other by proof of circumstances. The circumstances relied on would perhaps be sufficient to justify a decree of divorce if the evidence produced to establish them could be believed. But the radical infirmity of the petitioner's case lies just there. Looking at the evidence of his witnesses who testify to circumstances leading to the inference of guilt, in connection with the evidence of the defendant and her alleged paramours, positively denying, not only all criminal intercourse, but that they were ever together at the times and in the places testified to by the petitioner's witnesses, or that, at those times, they had any personal knowledge of each other, and keeping before my mind also the fact that the petitioner, in his zeal to get rid of his wife, has invoked the aid of at least one infamous person in this case—I am compelled to say that I find it impossible to believe that the testimony of his witnesses is true in any essential part; on the contrary, my conviction is that it is false. A judge, in such cases, must not allow himself to be duped or misled. He must look at the evidence as other men of discernment would view it, giving credit to what seems to him, in the exercise of a cautious judgment, to be true, and rejecting what seems to him to be improbable and false. The court is never obliged to adjudge that adultery is proved merely because a witness swears to it, or swears to facts from which it must be inferred. To justify such an adjudication, the court must be satisfied that the witnesses who swear to the facts showing guilt are honest, that they are not mistaken, and that their testimony is true.

All of the petitioner's witnesses, who give evidence tending to prove that his wife is an adulteress, are persons of questionable character; they either live lewd lives or engage in unlawful practices; they belong to the class of persons whom it is possible to corrupt, and the testimony of every one of them is, in some one or more material respects, improbable and unnatural.

One of the persons employed by the petitioner to collect evidence against his wife swears that the petitioner gave him $200 to pay a. witness, after the witness had testified that he had had criminal intercourse with the defendant. The person who was to serve as the witness, in this instance, also swears that he made an arrangement with the petitioner to testify that he had committed adultery with the defendant, for which the petitioner was to pay him $200, and that the petitioner placed the money in the hands of his own agent, to be held 'until he (the witness) had given his evidence, and that it was then to be paid to him, but, subsequently becoming satisfied that the defendant was not the person with whom he had had improper relations, he notified the petitioner that he could not perform his part of the contract. The petitioner denounces this whole story as a wicked fabrication, and as without the least shred of truth. It would be extremely difficult to decide which story is true and which is false, for I think it must be regarded as entirely certain, that if the petitioner was depraved enough to enter into such an arrangement, he would not hesitate to commit perjury to escape its consequences. This much, however, is free from all doubt: that the person who says he received the $200 was employed by the petitioner to collect evidence against his wife. This person swears that petitioner employed him to procure false testimony— in other words, to suborn witnesses to commit perjury in swearing that they had had adulterous intercourse with the defendant. He admits that he accepted the employment and tried zealously to accomplish its object. His infamy is confessed. He presents a distressing spectacle of marvelous moral degradation. He did not return the $200 to the petitioner, but appropriated it to his own use. When asked why he had not returned it, he replied : " Because I wasn't a fool." To be honest, even to his associate in crime, would, according to his code of honor, be the height of folly.

This person, after the first witness he procured for the petitioner failed to come forward and testify as the petitioner expected he would, procured other witnesses for the petitioner, with whom the petitioner and one of his counsel (Mr. Ryerson) had inter-

views in the city of New York, and who, in such interviews, pretended to have knowledge of facts tending to show the defendant's guilt, and who promised the petitioner to come to New Jersey and testify to them, but afterwards refused to do so unless they were paid considerable sums of money. He was in the petitioner's employ, collecting evidence, for a considerable period of time. Now, in my judgment, it was impossible for any man of ordinary experience and discernment to require more than a second interview with this man to discern his real character, and to see, that if nothing but the truth was desired, he was not the person to send in search of it. If the petitioner employed him originally without exercising the caution usual in such cases, and in ignorance of his true character, it is entirely clear that he continued him in his employ after he had learned sufficient concerning him to know that he was utterly untrustworthy, and that any evidence he procured would more likely be false than true. This fact naturally breeds deep distrust, and leads a cautious mind to look with suspicion upon any evidence produced by the petitioner, which does not furnish inherent testimony of its own truth, or does not proceed from sources so reliable that it must be believed.

Besides, it must be remembered that this is not the first time the petitioner has unsuccessfully attempted, by the testimony of witnesses of bad character, to procure his marriage to be dissolved. He brought a previous suit, not for the same cause, but a like cause. His wife recriminated in that suit, as she has in this. A divorce was refused by this court, because the court thought that the proofs showed both parties to be guilty. The petitioner appealed, and the decree of this court was affirmed, because, in the language of Chief-Justice Beasley, the court of errors and appeals were of opinion that the principal testimony on each side was so untrustworthy, as well on account of the bad character of the witnesses as the great improbability of their narrations, that it was not sufficient for the purpose of founding a conclusion of the guilt of either the husband or the wife, of the offence charged. *Fuller* v. *Fuller, 6 Stew. Eq. 583.* This language very fitly and forcibly describes the character of the evidence upon which the

petitioner's claim to a divorce now rests, and also the sources from which it proceeds. A divorce must be refused.

This is all that it would be necessary to say in deciding this case as between the parties. But, as already stated, the defendant, in resisting the petitioner's charge, has recriminated, accusing him of the same offence which he charges against her. This accusation necessarily imputes disgraceful conduct to another female. The proofs in support of that accusation have been heard and fully considered, and I feel it to be my duty to say, in justice to the person whose reputation is assailed, that they leave no doubt on my mind that the accusation is without the least foundation in fact, and that she is a pure and virtuous woman.